{¶ 59} The majority concludes, inter alia, that Moore's conviction for complicity to commit murder is supported by sufficient evidence. I must respectfully dissent because the opinion fails to address a few key points and it relies upon testimony by the only eyewitness which was later recanted. In order to convict a defendant of complicity to commit murder, the State must prove, among other things, that the defendant specifically intended to aid in the murder. In this case, there is no competent, credible evidence demonstrating that Moore knew of the principal's intent to murder the victim. Accordingly, the State failed to prove an element of the offense and Moore's conviction is not supported by sufficient evidence. Moore's conviction for complicity to commit murder should be vacated.
 {¶ 60} I do not disagree with the law cited and relied upon by the majority. But the law regarding complicity must be further explained. R.C. 2923.03(A) defines complicity and specifies that a person is only guilty of complicity when he acts with the kind of culpability required for the commission of the offense. It requires proof of two mental elements. State v. Mendoza (2000),137 Ohio App.3d 336, 343. For instance, in a murder case the State must not only prove the accomplice did some act which assisted the principal with the purpose of causing death, but must also prove that the accomplice intended to aid or abet the principal to commit murder. Id. "In this context, the first culpable mental state refers to the defendant's attitude toward his own conduct; the second mental element refers to the defendant's attitude towards the principal offender's conduct." Id. Thus, in this case, the State must prove that Moore intended to murder Shackleford and that he intended to assist Bryant in Shackleford's murder.
 {¶ 61} As the majority points out, there is no direct evidence of Moore's intent in this case. Opinion at ¶ 32. We recently dealt with another case in which the State only had circumstantial evidence that someone was guilty of complicity. InState v. Ratkovich, 7th Dist. No. 02-JE-16, 2003-Ohio-7286, the defendant was convicted of complicity to commit theft. The defendant drove her son to an electronic store so he could buy video games. While he was in the store, he stole two video game consoles. He ran out of the store with the consoles and into his mother's vehicle. He told her he stole the consoles and she drove the two away from the scene. The defendant appealed her conviction, claiming that the jury never should have been instructed on complicity. We agreed.
 {¶ 62} We concluded that the defendant could not be found guilty of complicity to commit theft unless the State proved that she knew her son was going to steal the consoles when she dropped him off. Id. at ¶ 23. "[T]he defendant's mere association with the principal offender is not enough to prove complicity." Id. at ¶ 16, citing State v. Mootispaw (1996), 110 Ohio App.3d 566,570. "If she was unaware of Cornell's intention to steal, she could not be convicted of complicity." Id. at ¶ 23.
 {¶ 63} The only evidence in that case that we said might suggest that the defendant knew of her son's intent to steal the consoles was testimony that when the store manager chased the son out of the store, he jumped into the defendant's vehicle, which was waiting in the first parking space with the engine running. Id. We characterized this evidence as "tenuous at best." Id. "It is a significant jump to conclude that because a mother drops her son off and waits for him to go into a store with the engine running in a close parking space that she knew he was going in to commit a theft." Id. "While appellant clearly acted with terrible judgment [when she drove her son away from the scene], she did not support, assist, encourage, cooperate with, advise, or incite Cornell in the commission of the theft. As we previously stated, Cornell completed the theft when he ran out of the store. And the evidence at trial does not suggest that appellant knew what her son was planning to do when she dropped him off at Circuit City." (Emphasis sic.) Id. at ¶ 26.
 {¶ 64} In this case, there is even less evidence to suggest that Moore knew of Bryant's intent to kill Shackleford prior to the time the offense was committed. Floyd, the only eyewitness, testified that Bryant and Moore were friends prior to this incident. And she testified that Bryant shot Shackleford after Shackleford and Moore came running from behind Shackleford's building. But there is no testimony that Bryant was involved in either of the altercations between Moore and Shackleford. Instead, Floyd only testified that Bryant was in the area during the second argument between Shackleford and Moore, as she had been. Finally, Moore stood over Shackeford's body with Bryant and ran away from the scene with him. But this is no different thanRatkovich's actions when she drove her son away with the stolen merchandise. Moore's actions after the crime occurred did not demonstrate the he was complicit in the crime. In Ratkovich,
there was evidence that the defendant and her son at least planned to do something that day, going to the store to buy video games. In this case, there is no evidence of complicity between Moore and Bryant for any purpose, legal or otherwise. Moore cannot be convicted of complicity without some concrete evidence that he and Bryant were acting together to kill Shackleford.
 {¶ 65} This is not to say that the State must provide direct evidence that Moore was complicit in Shackleford's murder since "circumstantial evidence inherently possesses the same probative value as direct evidence." Johnson at 341. But the State must introduce some evidence, rather than mere speculation, that the defendant is acting in concert with the principal before that defendant is convicted of complicity in the principal offense.
 {¶ 66} In support of its conclusion that there is some competent, credible evidence proving that Moore had the intent to kill Shackleford, the majority cites a portion of Floyd's testimony where she stated that she saw Moore shooting at Shackleford. Opinion at ¶ 33. But the majority ignores the fact that Floyd recanted this testimony on cross-examination. At that time, she testified that she saw fire coming from Bryant's gun, but not from Moore's gun. Tr. at 410. And on redirect she admitted that she only presumed that Moore was shooting at Shackleford before they ran around the building. Tr. at 426. Thus, the evidence that the majority is using to support a conviction for complicity to commit murder is testimony from a witness that is presuming that Moore shot at Shackleford.
 {¶ 67} Ohio law is replete with examples of the type of evidence which can establish this element of the offense. For instance, the defendant could have participated in planning an offense which resulted in the murder. Washington; In reWatson (1989), 47 Ohio St.3d 86; Lockett; State v. Calwise,
7th Dist. No. 00 CA 77, 2003-Ohio-3463; State v. McKibbon (Apr. 26, 2002), 1st Dist. No. C-010145; In re Koballa (Feb. 6, 1997), 8th Dist. No. 69511. If the defendant and principal are both members of a criminal gang, this is also evidence that they acted in concert. Johnson; State v. Hubbard, 7th Dist. No. 01 JE 4, 2002-Ohio-6904; In re Jones (Sept. 30, 1998), 10th Dist. No. 98AP-152. Likewise, the accomplice may accompany the principal to the scene of the crime. Johnson; Calwise;Hubbard; State v. Jones (Sept. 20, 2001), 8th Dist. No. 78545; State v. Rodriguez (May 17, 2000), 9th Dist. No. 98CA007255; In re Moore (Feb. 3, 2000), 8th Dist. No. 75673;Mathis; State v. Ledford (Nov. 25, 1996), 12th Dist. No. CA95-09-089; Prichard; State v. Thompson (Apr. 27, 1995), 8th Dist. No. 67048; State v. Smith (June 15, 1994), 9th Dist. Nos. 16027, and 16049. Another indication that the accomplice and principal were acting together is if the accomplice is injuring the victim in some way while the principal is murdering the victim. Watson; State v. Williams (1990), 67 Ohio App.3d 677;Hubbard; State v. Lay (Dec. 20, 2001), 8th Dist. No. 79095;State v. Moody (Mar. 13, 2001), 10th Dist. No. 98AP-1371;Rodriguez; Moore; State v. Patterson (May 2, 1997), 2d Dist. No. 15699; Koballa. A final indicator in many cases that the accomplice is acting in concert with the principal is if the accomplice verbally incites the principal to commit the murder.State v. Slocum (1998), 131 Ohio App.3d 512; State v. Fields
(1995), 102 Ohio App.3d 284; Williams; Hubbard; Lay; Statev. Jones; Patterson; Koballa; Mathis; Prichard. These types of additional facts, which are present in every other case involving complicity to commit either murder or aggravated murder, are all missing from this case.
 {¶ 68} Clearly, the jury could have found Moore guilty of some other offense. He was chasing a man soon after arguing and fighting with that man while brandishing a gun. These facts would arguably support a conviction for, among other things, aggravated menacing in violation of R.C. 2903.21(A). And it is "possible" that Moore and Bryant were acting in concert when Bryant shot and killed Shackleford. But criminal defendants should not be convicted of an offense merely because it is "possible" that they committed either that offense or another offense. The majority, like the jury, must speculate that Moore knew Bryant intended to kill Shackleford based merely on the fact that Moore and Bryant were friends and that Bryant was near Moore's argument with Shackleford, even though Bryant did not participate in the argument. But as we held in Ratkovich, a defendant is not guilty of complicity by association. The State must present sufficient evidence to prove beyond a reasonable doubt that Moore knew Bryant intended to kill Shackleford. This evidence is not present in this case.
 {¶ 69} The State failed to introduce any evidence that Moore intentionally aided and abetted Bryant in Shackleford's murder. Accordingly, Moore's second assignment of error is meritorious. His conviction was not supported by sufficient evidence and must be vacated.